13117

CITY OF GREENVILLE *ET AL.* v. QUERY *ET AL.*

(164 S. E., 844)

*Messrs. S. K. Nash, B. A. Morgan* and *J. M. Lynch,* for plaintiffs,

*Messrs. John M. Daniel, Attorney General* and *J. Fraser Lyon,* for defendants,

The opinion of the Court was delivered by MR. JOHN I. COSGROVE, Acting Associate Justice.

By this action in the original jurisdiction of the Court, the cities of Greenville, Sumter and Florence (the County of Sumter later intervening) seek to enjoin the enforcement of the Act of the General Assembly (Act No. 833, p. 1390), approved April 4, 1930, popularly termed the Gasoline Tax Act of 1930, praying that said Act "insofar as it applies to muncipalities, counties or political subdivisions of the State of South Carolina, be declared unconstitutional, null and void."

The complaint alleges, in substance, that plaintiffs and others in like plight for some time prior to the passage of this Act purchased gasoline and motor fuels without the State of South Carolina and imported the same in tank car lots, and have stored, used, and consumed such imported gasoline and motor fuels "for public purposes in connection with the discharge of the functions devolving upon them as municipal corporations under the laws of the State of South Carolina"; and, in addition, that they are not engaged in the handling of gasoline as a business or occupation, and have derived no revenue therefrom, the gasoline so imported being stored and used solely for municipal purposes; and further, that, if the Act is upheld, plaintiffs will be compelled to pay a tax upon the storage and use of gasoline for strictly municipal purposes.

They assail the Act as violative of both the Federal and State Constitutions.

It is asserted that the Act is unconstitutional under the Federal Constitution (Article 1, Section 8, Subd. 3) because it attempts to regulate interstate commerce and to impose a burden thereupon.

Under the State Constitution, its invalidity is urged under three heads: (1) That the tax is not such a tax as the General Assembly has the power to impose, in that: (a) It is a license tax imposed on a business or occupation, and as such cannot be made applicable to municipal corporations storing and using gasoline for governmental purposes. (b) It is a tax on the mere ownership of property and the alleged inherent right to use the same free from governmental interference; (2) the tax is not uniform and equal; and (3) the Act attempts to levy a tax on the property of municipalities and counties contrary to Section 4, Article 10, of the Constitution.

All of the objections to this statute above presented (with the exception of ground 3) were fully considered and decided against plaintiff's contentions in *Gregg Dyeing Company v. Query et al.,* 166 S. C., 117, 164 S. E., 588, the opinion in which will be filed herewith.

There remains, then, for consideration in this cause, only the objection that the Act is violative of the Constitution, Section 4, Article 10, in that it imposes a tax on the property of a municipality or county, exempt by law.

Section 4, Article 10, of the Constitution provides: "There shall be exempted from taxation all county, township and municipal property used exclusively for public purposes. "

Plaintiffs claim that property of political subdivisions, used for public purposes, are exempt from all duties or taxes of whatever nature or description; that the policy of this state is for a liberal construction of the exemption from taxation allowed municipal corporations; and that the Act taxes instrumentalities of government and impedes and burdens the exercise of governmental functions.

It is true that, in the absence of express declaration by the Legislature, there is a presumption, generally, against the intention of the legislative body to tax an instrumentality of state government or a state agency; and that, where an exemption from taxation of its property is claimed by such instrumentality or agency, a liberal construction of the exemption will be allowed by this Court. *State v. Columbia,* 115 S. C., 108, 104 S. E., 337. But in the instant case, the taxing body of South Carolina has expressly and clearly enacted that all municipalities, counties, and political subdivisions shall pay this tax. Rules of presumption and policy, therefore, disappear in the light of expressed legislative declaration.

We have just held in the *Gregg case, supra,* that this tax is not a tax on property at all; but that it is an excise imposed on the storage of gasoline in South Carolina for use and consumption in this State. Does, then the constitutional exemption claimed by plaintiffs as municipal corporations, extend to excise taxes as well as property taxes?

In South Carolina, taxes generally may be grouped into two classes; *ad valorem* taxes on property and taxes on privileges, excises, licenses, franchises, and other classifications of like kind.

A study of Article 10 of our Constitution, entitled "Finance and Taxation," convinces us that the framers of that instrument in this article were dealing solely with *ad valorem* taxes on property. See *Gregg Dyeing Co. v. Querry et al., supra; City of Louisville v. Cromwell,* 233 Ky., 828, 27 S. W. (2d), 377.

As was pointed out in that case, and in other decisions of this Court, there is no inhibition in our Constitution on the power of the General Assembly to impose excise taxes. As the provisions of Article 10 deal only with *ad valorem* taxes on property (and, in addition, with license taxes on occupations and businesses, income taxes, and others expressly

thereon named), it would seem logically to follow that the exemptions provided for in that article would apply only to the kinds of taxes therein dealt with and regulated. As neither this provision of the Constitution, nor any other, in any way refer to excise taxes, we hold that the exemptions therein allowed cannot be claimed against such taxes. In this conclusion we are not without support from eminent authority.

In 26 R. C. L., p. 315, we find: "An exemption from taxation applies primarily to the annual general property tax. Whether it is to be extended to other classes of taxes depends upon various circumstances. Thus it does not ordinarily apply to excises, especially to such as are not in lieu of property taxes but are imposed upon the enjoyment of a privilege."

Churches and similar institutions, likewise exempted under this article, have been denied by this Court exemption from liability for street improvement assessments. *Wesley M. E. Church v. Columbia*, 105 S. C., 303, 89 S. E., 641.

In addition, our conclusion is sustained by an almost unanimous line of contemporaneous authorities upholding a tax of this character against like objections of municipal corporations and governmental subdivisions. *Crockett v. Salt Lake County,* 72 Utah, 337, 270 P., 142, 62 A. L. R., 667; *Wright v. Fulton County,* 169 Ga., 354, 150 S. E., 262; *City of Louisville v. Cromwell,* 233 Ky., 828, 27 S. W. (2d), 377, 380; *City of West Palm Beach v. Amos,* 100 Fla., 891, 130 So., 710; *City of Portland v. Kozer,* 108 Or., 375, 217 P., 833; *People v. City and County of Denver,* 84 Colo., 576, 272 P., 629.

Plaintiffs cite and rely upon the case of *O'Berry v. Mecklenburg County,* 198 N. C., 357, 151 S. E., 880, 67 A. L. R., 1304, in which a like statute of North Carolina was held not to apply to counties of that state. In this case it is worthy of note that the tax in question was defined by the North Carolina Supreme Court to be an excise tax. That Court, however, expressly refused to pass on the constitu-

tional question involved. Its decision was merely that the terms and provisions of the Act there under consideration were not broad enough to include a county, there being an absence of express declaration of intention so to do. It is, therefore, of no application in the instant case, in which our statute expressly imposes the tax on the municipal corporations affected.

The other case relied on by plaintiffs is *Panhandle Oil Co. v. Mississippi*, 277 U. S., 218, 48 S. Ct., 451, 453, 72 L. Ed., 857, 56 A. L. R., 583. In this case, the Supreme Court of the United States held, in effect, that the sales tax on gasoline imposed by the Mississippi statute was a consumption tax paid by the consumer, and, as such, could not be assessed and collected on purchases of gasoline by the United States in the exercise of its constitutional powers. This conclusion was supported by a bare majority of one of that Court.

We, of course, are not bound by that decision on this point. We prefer, however, the view of Mr. Justice Holmes, who dissented from the conclusion of the majority that such a tax is a burden on the exercise of governmental functions and as tax on a governmental instrumentality. He said: "I am not aware that the President, the Members of Congress, the Judiciary or, to come nearer to the case in hand, the Coast Guard or the officials of the Veterans' Hospital, because they are instrumentalities of government and cannot function naked and unfed, hitherto having been held entitled to have their bills for food and clothing cut down so far as their butchers and tailors have been taxed on their sales; and I had not supposed that the butchers and tailors could omit from their tax returns all receipts from the large class of customers to which I have referred. The question of interference with government, I repeat, is one of reasonableness and degree and it seems to me that the interference in this case is too remote. *Metcalf v. Mitchell*, 269 U. S., 514, 70 L. Ed., 384, 46 S. Ct., 172."

A like argument was satisfactorily disposed of in *City of Louisville v. Cromwell, supra,* in this language: "Under the condition of the law as thus declared, it would seem superfluous to discuss the opinions of Courts in other jurisdictions, either state or federal, since the law as declared in this jurisdiction leads inevitably to the conclusion that plaintiff is not entitled to the exemption it claims. If it were otherwise, then the city would be exempt from paying the tax levied by statute upon the filing of suits on amounts above $50.00, and would also be exempt from paying the appeal tax fee collected on appeals to this Court. It would likewise be exempt from paying any inheritance, legacy, or succession tax that might be levied in cases when some patriotic citizen should devise it property, and the same would be true as to the enhanced price put upon commodities by dealers therein in order to recoup the amount of occupational or excise taxes that they have been required to pay. The same logic urged in support of plaintiff's claimed exemption would also entitle it to claim exemption from paying the enhanced value of any article it might purchase in the discharge of its governmental function and which enhancement was because of general *ad valorem* taxes that the person or dealer from whom the purchase was made may have placed on the selling price, and the principle so contended for would thus produce, in the attempted enforcement of the exemption, such entangled and confused conditions as to be practically incapable of enforcement and which it might be well presumed that the Legislature never intended to create."

Again, from the same case: "It also should not be overlooked that the involved tax is levied and collected solely by and for the benefit of the commonwealth and not by any municipality or other subdivision of the state. The proceeds go to make up the principal part of a fund to meet a supremely necessary purpose of modern creation, i. e., the construction and maintenance of roads of sufficient capacity to meet the requirements and necessities of modern vehicles of travel. The statute is so devised as to distribute the

burden of contributing to that fund in the most equitable and just manner possible. The roads are built and maintained for the use of the vehicles that consume the gasoline. The larger and heavier ones consume more of the taxed product than the lighter ones, and the heavier the vehicle the more damage it does to the roads and the greater the necessity for their increased substantiality. So that every one contributes in proportion to his use of the roads and in proportion to the corresponding damage done to them by such use. Counties, municipalities, and other taxing districts use them in the manner indicated the same as private individuals, and the involved tax is expended to enable the state to construct and maintain them for the use of such municipal authorities as much so as it is done for the private citizen."

These gasoline taxes have been pledged to the payment of the principal and interest on bonds, the proceeds of which were used, and are being used, in the construction and maintenance of the highways of this state. Millions of dollars of bonds have been issued and will be issued for these purposes. Good faith with the holders of these bonds would seem to require that no device should be countenanced which would permit evasion of the taxes so pledged, unless the act imposing them is clearly unconstitutional beyond a reasonable doubt. We are not so convinced.

It is therefore ordered that the temporary injunction herein is dissolved, the prayer for a permanent injunction denied, and the complaint and intervening petition dismissed.

Mr. Chief Justice Blease and Messrs. Justices Stabler and Carter concur.

Mr. Justice Cothran dissents.

Mr. Justice Cothran (dissenting): For the reasons stated by me, dissenting in the case of *Gregg Dyeing Company v. Query et al.,* I think that the Act of 1930 is unconstitutional, and that the injunction prayed for should be granted.