ORANGE STATE OIL COMPANY, a Florida Corporation, *Appellant*, v. ERNEST AMOS, as Comptroller of the State of Florida, *Appellee*.

En Banc.

Opinion filed October 17, 1930.

*Hudson & Cason,* and *Park H. Campbell,* for Appellant;

*Fred H. Davis,* Attorney General, and *H. E. Carter,* Assistant Attorney General, for Appellee.

STRUM, J.—Sections 1153 and 1164, Comp. Gen. Laws 1927 (Chapters 12037 and 12012, Acts of 1927), require "every dealer" in gasoline, in addition to other taxes, to pay a tax aggregating five cents per gallon for "every gallon" of gasoline sold by him.

The question here presented is whether or not this tax applies to the sale of gasoline to municipalities.

Appellant, a dealer in gasoline, has sold large quantities of gasoline to the City of Miami, a municipal corporation, and upon those sales seeks to enjoin the collection by the Comptroller of the taxes imposed by the statutes just mentioned. A general demurrer to the bill was sustained, from which order this appeal is taken.

Appellant contends that since the amount of the tax is added by the dealer to the price of the gasoline and is paid by the purchaser, the dealer thus acts merely as a collecting medium, the ultimate result being that the tax becomes a tax against the city upon every gallon of gasoline purchased by it, no tax being due until there has been a sale by the dealer upon which title to the gasoline passes to the purchaser. This contention is upon the theory that a tax upon the sale of an article which is added to the purchase price is a tax upon the article itself in the hands of the purchaser, and that Sec. 897, Comp. Gen. Laws 1927, which exempts "all public property" of the several cities defeats the tax upon gasoline sold to municipalities, since the amount thereof is paid by the purchaser.

To support these views, appellant relies upon Western Union Tel. Co. v. Texas, 105 U. S. 460, 26 L. Ed. 1067;

Brown v. Maryland, 12 Wheat. 419, 6 L. Ed. 678; Jay Bird Mining Co. v. Weir, 271 U. S. 609, 70 L. Ed. 1112; Gillespie v. Oklahoma, 257 U. S. 501, 66 L. Ed. 338; Panhandle Oil Co. v. Mississippi, 277 U. S. 218, 72 L. Ed. 857, 56 A. L. R. 583, and like cases. In those cases State taxes, both *ad valorem* and excise, were held invalid as constituting burdens upon interstate commerce; upon the importation of foreign goods; or upon the Federal government, its agencies, property or the exercise of its functions.

It is true that for the purpose of applying the prohibitory mandates of the Federal Constitution it was held in effect in Brown v. Maryland, *supra,* that where a tax is so devised that the burden thereof falls upon an article which is the subject of taxation, the tax is to be considered as laid on the article, rather than on him who is charged with the duty of paying it into the treasury, and in that sense a tax upon the sale of an article "imported only for sale" is a tax on the article itself; and in Panhandle Oil Co. v. Mississippi, *supra,* that to employ the number of gallons of gasoline sold in the United States as a measure of the privilege tax on the sale of such gasoline is in substance to tax the sale, and therefore to exact a tax tribute from the United States. That decision rests upon the elemental proposition that the United States, being in all respects a co-equal sovereignty with the States, and in its own sphere a superior sovereignty, is immune from taxation by the States. A municipality is in no sense a superior, or even a co-equal, sovereignty with the State. It is a subordinate political entity, subject to the plenary control of the State. Constitution, Art. VIII. In the Federal cases above cited the Court had under consideration the prohibitions of the Federal Constitution just above mentioned as affecting the *power* of the states in the imposition of taxes.

This case presents an altogether different question, and considerations control here other than those involved in the

Federal cases just above cited. Here we are dealing with a question of exemption rather than a question of the power to impose a tax. The term exemption presupposes the existence of a power to tax, the power being forestalled by some constitutional or statutory provision. Appellant concedes the power of the Legislature to tax municipalities. The question here is therefore one of statutory construction as to whether or not, if this be a tax which falls upon the municipality, it is one from which the muncipality is exempt under Sec. 897, *supra*, or by an implied exception to Sections 1153 and 1164, *supra*.

When considering the taxation of individuals, the rule is that exemption provisions will not be enlarged by construction, nor can they rest upon implication. Taxation is the rule; exemption is the exception which must be created by clear and definite terms.

In respect to taxation of cities, however, the rule is otherwise. In as much as taxation of public property would necessarily involve other taxation for the payment of taxes so laid, such property is usually excluded by implication from the operation of laws imposing general taxes, unless there is a clear intent to include it. See Trustees v. City of Trenton, 30 N. J. Eq. 681; City of Jackson v. State, 126 So. R. 2; 8 Cooley, Taxation (4th Ed.) Sect. 621. In this respect our statute, Section 897, Comp. Gen. Laws, 1927, in so far as it relates to cities and counties, is largely declaratory of the general rule independent of statute.

Our Constitution, Article IX, Section 1, amongst other things, provides that the Legislature shall prescribe such regulations as shall secure a just valuation of all "property," both real and personal, excepting such "property" as "may" be exempted by law for municipal (and other enumerated) purposes. That provision is permissive and

relates only to the "property" of municipalities. Section 897, Comp. Gen. Laws, 1927, passed pursuant thereto, exempt all public "property" of municipalities from taxation. That is a general exemption from "property" taxes which clearly does not exclude indirect excise taxes, which were not regarded as excluded under the general principles of law of which Section 897, *supra,* is largely declaratory. City of Portland v. Kozer, 217 Pac. R. 833; U. S. v. Perkins, 163 U. S. 625, 41 L. Ed. 287; In re Merriam, 36 N. E. R. 505; 1 Cooley, Taxtion (3rd Ed.) p. 357, 37 Cyc. 1572.

In Amos v. Mathews, 126 So. R. 308, and in Amos v. Gunn, 84 Fla. 285, 94 So. R. 615, we held that this tax is an excise tax upon the privilege of selling gasoline. The tax is not upon the property but is upon the privilege of selling it. It is the price exacted by the State for disposing of this class of property by sale. See U. S. v. Perkins, 163 U. S. 625, 41 L. Ed. 287. In this respect the tax is analogous to an inheritance tax, which is not laid upon the property but upon the privilege of transmitting it by inheritance. This is not a tax upon "public property" in the hands of the city. Liability of the dealer for the tax arises contemporaneously with the sale to the city. This tax, like other excise taxes, is not laid upon any particular property, nor does the amount of the tax depend upon the value of any particular property. The amount of the tax is measured by the amount of the business done by the dealer, irrespective of the value of the commodity sold. The market value of the gasoline may fluctuate, yet the amount of the tax remains the same. It, therefore, relates, not to property, but to a privilege. These characteristics, and others, distinguish this tax from the general property tax contemplated by Section 897, *supra.* A general property tax is ordinarily one levied upon specific property and upon an *ad valorem* basis.

Furthermore, the statute expressly exacts payment of the tax from the dealer. See Pierce Oil Corp. v. Hopkins, 282 Fed. R. 253. He is required to report and pay it, and is penalized for an omission so to do, unless paid by a predecessor in title. Nothing is required of the purchaser. As to the purchaser, the tax is indirect, forming not a tax upon the property itself, but merely an element in the fixing of its purchase price.

It may be conceded that this privilege tax exacted from the dealer, like all other taxes, is added by the dealer to the price for which the commodity is sold to the purchaser. That is true of all purchasable commodities. Taxes paid by the dealer thereon are passed along to the consumer in one form or another. In the course of their operation, municipalities become the purchaser of a great variety of commodities in common use. On all of these, dealers who sold them—presumably at least—have paid property taxes as well as excise taxes for the privilege of engaging in business, and the amount of such taxes has been added to the price of the commodities. Yet it would hardly be contended that under such circumstances the taxes exacted of the dealer should be abated in proportion to the amount of his sales to municipalities.

Moreover, the tax in question is not imposed for the purpose of raising general revenue for the payment of the usual and ordinary expenses of State government. The proceeds of the tax are devoted to the building and repair of roads, and to public education. While the roads are usually constructed outside the limits of municipalities, and while municipalities are not directly charged with the duty of public education, nevertheless such roads are not only used by the municipality to some extent, but obviously contribute to the general prosperity and welfare of the municipality and its citizens; and public education carried

on by the State, in part from funds derived from this tax, likewise contributes to the public welfare of the several cities, in which most of the schools are located, and likewise relieves the citizens of such cities of public burdens they might otherwise be called upon to bear. Thus the cities, as such, substantially share in the benefits of the tax. See City of Portland v. Kozer, 217 Pac. R. 833; Crockett v. Salt Lake County, 270 Pac. R. 142; City of Jackson v. State, 126 So. R. 2; Pierce Oil Corp. v. Hopkins, 282 Fed. R. 253, State v. Preston, 206 Pac. R. 304; 23 A. L. R. 414; 37 Cyc. 1572.

The language of Sections 1153 and 1164, *supra,* is quite explicit as to who shall pay the tax therein imposed, and that it shall be paid upon ''every gallon'' of gasoline sold. There is no indication in either of those statutes that it was intended by the Legislature that the tax should not be paid upon gasoline sold to municipalities, or that municipalities should be relieved of paying any increase in the price of gasoline occasioned by the dealer adding the tax to the purchase price.

It has been held in other states that a tax of this character is a tax upon the dealer or distributor, not upon the purchaser. City of Jackson v. State; City of Portland v. Kozer, *supra.* In Texas Co. v. Brown, 258 U. S. 466 (480), 66 L. Ed. 721 (788), the Supreme Court of the United States while considering a tax of this general character imposed upon the dealer who makes the first intrastate sale, said that the Legislature intended ''the effect of the tax to fall upon the ultimate consumer.'' That statement was in part influenced, however, by the specific terms of the statute then under consideration. Even if we felt constrained to regard the tax as one the effect of which ultimately falls upon the consumer, the city, it is an indirect excise tax—not a property tax—and, therefore, not within

the exemption of Section 987, *supra,* nor is such a tax upon municipalities forbidden by the Constitution.

Affirmed.

TERRELL, C. J., and WHITFIELD, ELLIS, BROWN and BUFORD, J. J., concur.